[Civ. No. 25566.   First Dist., Div. Three.   Aug. 8, 1968.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent; LEWIS HAMPTON, JR., Real Party in Interest.

Thomas C. Lynch, Attorney General, Derald E. Granberg and William D. Stein, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

William R. Higham, Public Defender, and Henry C. Fryer, Deputy Public Defender, for Real Party in Interest.

DRAPER, P. J.—The fruits of one burglary were discovered when police searched an automobile involved in another such crime. Defendant Hampton moved to suppress this evidence (Pen. Code, § 1538.5, subd. (a)(1)). His motion was granted, and the People sought mandate (Pen. Code, § 1538.5, subd. (o)). We issued alternative writ.

Mrs. Jones was a baby-sitter at the Hill home in a residential area of Richmond. At about 9 a.m. she noticed two men in a white Cadillac parked across the street. They sat for some time. The driver then left, walked around the corner, and ultimately returned. The car was driven away, returned, and again parked, bearing the same two men. It was gone when Mrs. Jones went out to lunch, taking the baby with her. When

she came back, the Cadillac was again parked, but was vacant. As Mrs. Jones opened the door of the Hill residence, a man rushed out and ran down the street, away from the Cadillac, and disappeared. Mrs. Jones recognized him as the driver of the Cadillac she had seen in the morning. The police were called, and when the officer arrived, she told him of her observations. The officer inspected the Cadillac and found it registered to defendant Hampton at an address remote from the Hill residence. In the glove compartment he found a wallet belonging to one Jerry Williams, whose name he knew in connection with burglary investigation. The officer took the keys from the ignition and opened the trunk. There he found a television set and a typewriter later discovered to have been stolen from a house just around the corner from the Hill home. It is this evidence which was suppressed. Hampton later returned to the car, and was then arrested. No warrant for search or arrest had been issued. Hampton raised the present issue at preliminary examination, but was held to answer. Motion to suppress was made in superior court based upon the evidence at preliminary, and was granted.

█ The ready mobility of an automobile may render its search reasonable when search of a house or other fixed structure would not be (*Cooper* v. *California,* 386 U.S. 58, 59 [17 L.Ed.2d 730, 732, 87 S.Ct. 788] ; *Carroll* v. *United States,* 267 U.S. 132, 151 [69 L.Ed. 543, 550, 45 S.Ct. 280, 39 A.L.R. 790] ; see *People* v. *Gale,* 46 Cal.2d 253, 255 [294 P.2d 13] ).

Most commonly, search of an automobile without warrant is incidental to the arrest of an occupant. Hence most decisions in this field turn upon the propriety of the arrest. Here, however, the car was unoccupied when found by officers. Obviously, the search was not triggered by an arrest. On the contrary, the search contributed added grounds for the subsequent arrest.

But searches of an automobile, in no way incident to arrest, have been held proper (*Perez* v. *Superior Court,* 250 Cal.App. 2d 695 [58 Cal.Rptr. 635] ; *People* v. *Demes,* 220 Cal.App.2d 423 [33 Cal.Rptr. 986] ; *People* v. *Moulton,* 210 Cal.App.2d 673 [27 Cal.Rptr. 132] ; *People* v. *Molarius,* 213 Cal.App.2d 10 [28 Cal.Rptr. 541] ; *People* v. *Simons,* 208 Cal.App.2d 83 [25 Cal.Rptr. 57] ; *People* v. *Brajevich,* 174 Cal.App.2d 438 [344 P.2d 815] ). Analogous is the decision upholding a search following an arrest which either is invalid or does not justify a search (*People* v. *Koelzer,* 222 Cal.App.2d 20, 28-29 [34 Cal. Rptr. 718] ).

In these cases, the articles produced by such searches have included narcotics, stolen property, implements used in the commission of crime, and means of identifying the perpetrator. Reasonable cause has been found not only in known use of the car in a specific crime but also in its use in "an equivocal situation" (*Perez* v. *Superior Court, supra*), which indicates commission of a crime but not the specific offense.

We conclude that when the officers have reliable information strongly indicating the use of an automobile in the commission of a crime or in the escape of the offender, they may properly search that car even though it is unoccupied when found.

Of course, "whether a search and seizure is unreasonable . . . depends upon the facts and circumstances of each case" (*Cooper* v. *California, supra*, 386 U.S. 58, 59 [17 L.Ed. 2d 730, 732]; *People* v. *Webb*, 66 Cal.2d 107, 114-115 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]).

In the case at bench, the facts fully warrant the search. Unauthorized entry of the Hill residence was established by the statement of the occupant. The precipitate flight of the intruder indicated his burglarious intent. The babysitter's recital showed the intruder's possession and control of the car, and strongly suggested its use by him as a point of surveillance. The burglar had fled on foot. The automobile offered the best clue to his identity. The frequent use of stolen cars as a cloak for criminal activities negated reliance on the registration slip as conclusive of the offender's identity. The glove compartment revealed the wallet of one known to the officer in earlier burglary investigations. The keys in the ignition lock invited investigation of the trunk of the car for burglar tools which might carry fingerprints of one or both of the car's earlier occupants, and opening of the trunk disclosed evidence of still another burglary. The officer would have been remiss in his investigation of the Hill burglary if he had not begun and continued this search.

Hampton's use of the car in one burglary warranted the search, and bars his resort to the Fourth Amendment as a refuge from prosecution for another and more successful housebreaking.

It is of no avail to suggest that the officer, having the car under surveillance, had time to secure a search warrant. "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was rea-

sonable." (*United States* v. *Rabinowitz*, 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430].)

▊ Hampton suggests that the officer did not have all the information the baby-sitter testified she transmitted to him. Unquestionably, it is the information known to the officer, rather than data not transmitted to him before the search, which must be looked to in determining whether the search was reasonable. But the argument is a mere quibble. The officer testified that the baby-sitter told him of the intruder and his flight, pointed out the white Cadillac, and said that she believed its occupants "were the responsibles." The magistrate implicitly found her communication to the officer adequately detailed.

Let peremptory writ of mandate issue, directing respondent court to vacate its order for suppression.

Salsman, J., and Brown (H. C.), J., concurred.